UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BERNARD PAUL LIVSEY,

                              Plaintiff,                DECISION AND ORDER

-vs-

                                                     1:19-CV-0759 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

## INTRODUCTION

Plaintiff Bernard Paul Livsey brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Nov. 8, 2019, ECF No. 8; Def.'s Mot., Jan. 7, 2020, ECF No. 9. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is denied, the Commissioner's motion (ECF No. 9) is granted, and the Clerk of Court is directed to close this case.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. Plaintiff filed his DIB application on June 22, 2016, alleging an onset date of January 30, 2013. Transcript ("Tr.") 166, Sept. 9, 2019, ECF

No. 6. Plaintiff also filed an application for SSI benefits on June 22, 2016. Tr. 170. In his disability report, Plaintiff reported his height at 5'8", his weight as 441 pounds, and he listed the following conditions as limiting his ability to work: hernia, morbid obesity, hypertension, chronic knee and back pain, dysesthesia on exertion, shortness of breath, and nausea associated with exertion. Tr. 191. On September 8, 2016, the Commissioner notified Plaintiff that he did not qualify for either DIB or SSI benefits. Tr. 104. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 114.

Plaintiff's request was approved and the hearing was held via video conference on June 11, 2018. Tr. 30. The ALJ presided from the hearing office in Albany, and Plaintiff appeared with his attorney, Jeanne Murray, from the Buffalo hearing office. Tr. 32. Vocational expert Sakina Malik testified by telephone. Tr. 77–81. In her opening statement, Attorney Murray summarized Plaintiff's claims for the ALJ as follows:

> [T]he claimant does suffer from a number of complications due to his obesity . . . . The claimant has experienced just chronic pain throughout his body, and in his joints. He also has been diagnosed with diabetes and, subsequently, with neuropathy. He also does experience chronic nausea as well as GERD. All of these, and all of the complications that have come along because of the obesity do cause him to be disabled.

Tr. 36–37.

In his decision on July 16, 2018, the ALJ found that Plaintiff was not disabled through December 31, 2016, the date he was last insured, and denied DIB benefits. Tr. 26. However, the ALJ found that Plaintiff was disabled for the purposes of SSI benefits beginning on June 11, 2018. Tr. 26. On April 12, 2019, the Social Security

2

Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). 42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3).

A reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "Where the Commissioner's decision rests on

adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

In his decision in this case, the ALJ found that the Claimant met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 16. The

4

ALJ then followed the five-step sequential evaluation process and found that Plaintiff was not disabled for the purposes of DIB through December 31, 2016, the date he was last insured under the program. Tr. 26. However, the ALJ found that Plaintiff was disabled for the purposes of SSI beginning on June 11, 2018. Tr. 26.

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 20, 2013, the alleged disability onset date. Tr. 18. At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetic neuropathy in extremities, chronic back pain, chronic knee pain, dyspnea on exertion, shortness of breath, and morbid obesity. Tr. 18. The ALJ also noted that he did "not see sufficient clinical, laboratory, or medical opinion evidence to support a finding that the claimant's high blood pressure, or urinary and bowel incompetence, considered singly or in combination with his other impairments, caused more than minimal work-related limitations." Tr. 19.

At step three of the analysis, the ALJ determined that Plaintiff's physical impairments, considered either individually or in combination, did not meet or medically exceed the severity of one of the Commissioner's listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 19. The ALJ expressly considered the listings for "major dysfunction of a joint," "disorders of the spine," "chronic respiratory disorders," "endocrine disorders," and "peripheral neuropathy." Tr. 19–20. Having done so, he found the record did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment. Tr. 20.

Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), with the exceptions that Plaintiff:

> [W]ould require an option to sit/stand at will, may only frequently handle, finger or feel bilaterally, may frequently balance, may only occasionally stoop, but never kneel, crouch, crawl or climb ramp[s], stairs, ladders, ropes or scaffolds, and must avoid all hazards including unprotected heights, dangerous machinery, and driving a motor vehicle, as well as all pulmonary irritants.

Tr. 20. Based on this RFC, and on the testimony of the vocational expert, the ALJ found that Plaintiff was not capable of performing his past relevant work as a medical equipment repairer. Tr. 24.

Because Plaintiff was not capable of performing his past relevant work, the ALJ noted that Plaintiff's age became a factor for consideration in determining transferability of job skills and Plaintiff's ability to adjust to other work. *See* 20 C.F.R. § 404.1562(a) and § 416.963(a). The ALJ found that prior to June 11, 2018, the transferability of Plaintiff's job skills was not material to a disability determination because Appendix 2 to Subpart P of Part 404, the Medical Vocational Guidelines, directed a finding of "not disabled" regardless of job skills transferability. Tr. 24. Based on the vocational expert's testimony, the ALJ found that Plaintiff was not disabled prior to June 11, 2018, because a person of Plaintiff's RFC could perform such unskilled jobs in the national

6

economy as addresser, document preparer, and tube operator. Tr. 25. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB through his last insured date of December 31, 2016. Tr. 26.

However, the ALJ determined that Plaintiff's age category changed to "individual closely approaching advanced age" on June 11, 2018, at which point the Medical Vocational Guidelines rule 201.14 directed a finding that Plaintiff is disabled. Tr. 25. Hence, the ALJ found Plaintiff *was* disabled for the purposes of SSI beginning on June 11, 2018. Tr. 26.

In seeking reversal of the Commissioner's decision, Plaintiff argues that the ALJ improperly rejected the medical opinions of Plaintiff's treating physician, Dr. Calvin Schierer, D.O., that indicated Plaintiff was disabled. Pl. Mem. of Law, 10–16, Nov. 8, 2019, ECF No. 8-1. In particular, Plaintiff observes that the Second Circuit requires that if an ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must explicitly consider the non-exclusive factors set forth by the Second Circuit in *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Plaintiff states that in this case, the ALJ failed to properly consider the *Burgess* factors, which support the assignment of more weight to the opinion of the treating physician, Dr. Schierer.

The "Treating Physician Rule"

For claims filed before March 27, 2017, 20 C.F.R. § 404.1527 requires that the "treating physician rule" be applied when determining a claimant's disability status. § 404.1527(c)(1) provides that, generally speaking, the medical opinion of a source who has examined the claimant is entitled to greater weight than a source who has not. Further,

7

§ 404.1527(c)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.[1]

"[I]t is well settled that the ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008).  Nevertheless, the Second Circuit has cautioned that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999).  Indeed, the regulations require that the treating source's medical opinion be controlling *only* if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ."  20 C.F.R. § 404.1527(c)(2).

Where the treating source's medical opinion does not meet these criteria, the ALJ is required to give "good reasons" for the weight assigned to the opinion.  *Id.*  The ALJ must determine the weight of the opinion by analyzing the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship,

---

[1] For claims filed after March 27, 2017, the rules in § 404.1520c apply to the evaluation of opinion evidence.

8

supportability of the opinion by relevant evidence, consistency with the record as a whole, the source's level of specialization, and other relevant factors. 20 C.F.R. § 404.1527(c)(2)–(6).

An ALJ's failure to explicitly apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citing *Selian v. Astrue*, 708 F.3d 409, 419–20 (2d Cir. 2013)). Nevertheless, if "a searching review of the record" assures the reviewing court that the procedural error was harmless, and "that the substance of the treating physician rule was not traversed," then the reviewing court will affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

The Court has carefully reviewed both the ALJ's hearing decision and the record as a whole, and finds that the ALJ considered the *Burgess* factors, and that his treatment of Dr. Schierer's opinion was not improper. After a consideration of Dr. Schierer's treatment notes in the record (Tr. 21–22), the ALJ provided a thorough analysis:

> Throughout the period of alleged disability, Dr. Schierer's treatment of claimant was limited to conservative care, medication and recommendations for calorie reduction and exercise. There is no evidence the claimant was hospitalized for any medical condition. There were no referrals for specialized evaluation or diagnostic testing, no diagnosis regarding etiology of claimant's joint or back pain, or incontinence, no objective radiologic evidence, or pulmonary function testing. There is no record of referrals to orthopedic, pulmonary, or endocrine specialists, or nutritionists . . . .
>
> The [ALJ] has carefully considered the opinion of the claimant's primary care physician, Calvin Schierer, DO. Dr. Schierer completed numerous medical reports for the Department of Social Services in Allegany County, all indicating the claimant was essentially unable to engage in any exertional activity and was not employable in any capacity. He also completed a medical source statement dated May 3, 2018.

> . . . The undersigned finds that the conclusions reached by Dr. Schierer are inconsistent with the clinical findings on his own examinations and clinical findings identified by consultative examiner, Dr. Liu.  Further, the opinions are inconsistent with the limited treatment provided, lack of any objective testing, or referral to any specialists.  Apart from Dr. Schierer's conclusory opinion, the medical evidence of record does not contain medical recommendations, activity restrictions, or functional assessments from an accepted medical source that contraindicate the performance of sedentary exertional work . . . Accordingly, the [ALJ] finds that the opinion of Dr. Schierer in regard to the claimant's functional limitations is of limited probative value, and not necessarily reflective of the claimant's condition during the length of the adjudicative period, but more probative as to his condition as of the date of this hearing.  Therefore, I have given his opinions some limited weight, particularly regarding the claimant's condition from his alleged onset date, and more weight regarding the claimant's condition as of the date of the hearing.

Tr. 22–23 (internal citations to the record omitted).   In short, the ALJ assigned limited weight to Dr. Schierer's opinion only after taking into account the length of Dr. Schierer's treatment relationship with Plaintiff,[2] the frequency of Dr. Schierer's examination of Plaintiff, the nature and extent of Dr. Schierer's treatment relationship with Plaintiff, the supportability of Dr. Schierer's opinion by relevant evidence, consistency of Dr. Schierer's opinion with the record as a whole, Dr. Schierer's level of specialization (i.e., a primary care physician), and Dr. Schierer's failure to refer Plaintiff to any orthopedic, pulmonary, or endocrine specialists.

Moreover, it is noteworthy that in *Burgess*, the case relied upon by Plaintiff, the Second Circuit specifically pointed out that "the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not

---

[2] The ALJ's decision explicitly acknowledges that Dr. Schierer has been Plaintiff's primary care physician since 2014. Tr. 21.

10

consistent with ... the opinions of other medical experts . . ., for "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve," *Burgess*, 537 F.3d at 128.   In this case, Plaintiff was examined by Dr. Hongbiao Liu, M.D. on August 10, 2016, and Dr. Liu drew a different conclusion than Dr. Schierer.   Tr. 274–277.   After examining Plaintiff, Dr. Liu's opinion was that Plaintiff had only "mild to moderate limitation for prolonged walking, bending, and kneeling" rather than an entirely disabling condition.   Tr. 277. The ALJ afforded this opinion great weight, largely because Dr. Liu's opinion was consistent with "the context of the overall medical report documenting limited positive clinical findings, . . . the reported findings of the claimant's treating medical providers, [and] the limited nature of the claimant's treatment . . . ."   Tr. 23.   In other words, the ALJ gave greater weight to Dr. Liu's opinion than Dr. Schierer's opinion because Dr. Liu's opinion was more consistent with the medical record as a whole.   *See Matta v. Astrue*, F. App'x 53, 56 (2d Cir. 2013) (stating the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

The ALJ's resolution of the conflict between the medical opinions of Dr. Schierer and Dr. Liu was not unreasonable given the other evidence in the record.   Such other evidence included not only Dr. Schierer's treatment notes, but Plaintiff's admission "in his pre-hearing materials that he remained capable of preparing his own meals, performing light household chores, driving a car, travelling independently, and shopping in stores."   Tr. 21.   Plaintiff also "reported no difficulty with concentration or attention or interaction with others . . . [and] reported he spent his time reading, playing Xbox and watching videos on YouTube."   Tr. 21.   As the ALJ noted, "[w]hile none of these factors

11

alone is inconsistent with a finding of disability, taken together they are suggestive of an individual capable of performing work activity on a sustained basis within the above residual functional capacity." Tr. 21.

## CONCLUSION

In sum, the Court finds that the ALJ's decision applied the appropriate legal standards, and rests on adequate findings supported by evidence having rational probative force. Accordingly, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 8) is denied, and the Commissioner's motion (ECF No. 9) is granted. The Clerk of Court is directed to close this case.

DATED: September 08, 2020
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge